UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN MOODY, *et al.*,

                    Plaintiffs,                        Case No. 12-cv-13593
                                                    HON. GERSHWIN A. DRAIN

vs.


MICHIGAN GAMING CONTROL BOARD,
*et al.*,
                    Defendants.
_____/

**ORDER DENYING IN PART PLAINTIFFS' MOTION TO COMPEL [#62], DENYING AS MOOT PLAINTIFFS' MOTION TO COMPEL [#64], DENYING  NON-PARTY DECLERCQ'S MOTION TO QUASH SUBPOENA [#67], GRANTING DEFENDANTS' MOTION TO QUASH SUBPOENA [#73], DENYING PLAINTIFFS' MOTION TO EXTEND DISCOVERY [#75], DENYING PLAINTIFFS' MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT [#76] AND GRANTING DEFENDANTS' MOTION FOR LEAVE TO FILE EXCESS PAGES [#82], GRANTING DECLERCQ'S MOTION TO STRIKE PLAINTIFFS' EMERGENCY REQUEST [#88] AND SCHEDULING ORAL ARGUMENT FOR AUGUST 6, 2013**

I.      **INTRODUCTION**

Plaintiffs, catch drivers, owners and trainers for the harness racing industry, filed this action pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief concerning Defendants' suspension of their occupational licenses, as well as their subsequent issuance of exclusion orders preventing Plaintiffs from working in the local or national harness racing industry from May of 2010 through the present.  Presently before the Court are various discovery motions, Plaintiffs' Motion to Extend Discovery, and Plaintiffs' Motion for Leave to Amend the Complaint.  A hearing was held on June 12, 2013.

## II.    FACTUAL BACKGROUND

Plaintiffs, John Moody, Donald Harmon, Rick Ray and Wally McIllmurray, Jr., filed the instant action on August 14, 2012.  The claims arise from Defendant, the Michigan Gaming Control Board's ("MGCB"), investigation into a race fixing scheme in 2008 and 2009.  The Plaintiffs were among a group of eight individuals who were targeted as involved in suspicious races.  The MGCB reported its findings to the Michigan State Police ("MSP").  The MSP opened a criminal investigation.

The MGCB summoned each of the Plaintiffs for administrative hearings, however Plaintiffs allege that they were told by the MGCB's Operations Manager, Defendant Gary Post, and MSP Detective Thomas DeClercq, that they would be arrested upon the conclusion of the administrative hearing.  Thus, Plaintiffs invoked their Fifth Amendment privilege against self-incrimination and did not answer questions concerning their knowledge or involvement in race fixing, as well as relied on the privilege  in refusing to bring their 2008 and 2009 bank records sought by the MGCB's summonses. The stewards issued their ruling on May 20, 2010 suspending all of the Plaintiffs' occupational licenses based on their failure to fully cooperate in the investigative hearing.

Thereafter, Plaintiffs sought injunctive relief in the Wayne County Circuit Court, which the court denied in June of 2010.  While Plaintiffs' appeal was pending in the Michigan Court of Appeals, the MGCB issued Orders of Exclusion prohibiting Plaintiffs from being licensed in Michigan under the Racing Act.  When Plaintiffs submitted their applications for occupational licenses for the 2011 year, the MGCB refused to process them based on the Exclusion Orders. Plaintiffs attempted again in 2012 to obtain their licences, however their applications were similarly not acted upon by MGCB officials based on the Orders of Exclusion.

4:12-cv-13593-GAD-SDD   Doc # 92   Filed 06/18/13   Pg 3 of 15   Pg ID 2423

Plaintiffs' Complaint contains a count for declaratory relief, wherein Plaintiffs assert that they are entitled to judgment declaring that their constitutional rights have been violated by issuance of the suspension and exclusion orders, and by refusing to renew their licenses unless Plaintiffs forfeited their rights to counsel and the Fifth Amendment privilege against self incrimination.  Plaintiffs allege a Fourth Amendment violation for Defendants deprivation of their liberty interest to engage in a lawful occupation and a procedural Due Process violation claim.  Lastly, Plaintiffs bring a claim for "unconstitutional conditions" pursuant to the Fifth and Fourteenth Amendments because "[t]he Government may not condition the exercise or enjoyment of a constitutional right (the Fourth Amendment right to engage in a legal occupation and the Fifth and Fourteenth Amendment rights not to be deprived of property without due process of law) on pain of having to forfeit another constitutional right (the right not to be forced to incriminate oneself under the Fifth Amendment . . . .)."

## III.   PROCEDURAL HISTORY

On September 4, 2012, Plaintiffs moved for a preliminary injunction seeking an order from the Court reinstating their occupational licenses.  After a hearing, the Court denied Plaintiffs' Motion for a Preliminary Injunction on November 2, 2012.  At the hearing, Defendants argued that Plaintiffs failed to exhaust their administrative remedies with respect to their suspension orders, however they could still pursue their administrative appeal.  Thus, Plaintiff's counsel submitted a letter of appeal on November 27, 2012, and an administrative appeal hearing was held in May of this year concerning the Plaintiffs' summary suspensions in May of 2010. [1]  Thereafter, Plaintiffs filed

---

[1]  Plaintiffs contend that Defendants eleventh hour attempt to provide  them an appeal of their suspension orders demonstrates their illegal conduct in conspiring to deprive Plaintiffs of their constitutional rights.  Throughout 2011, Defendants maintained that Plaintiffs could not appeal their suspension orders because the deadline had already passed.

-3-

a Motion for Reconsideration of this Court's Order Denying their Motion for Preliminary Injunction, which this Court denied on March 4, 2013.

On November 27, 2012, Plaintiffs served their first set of discovery requests. Defendants served their responses, consistent with the parties' stipulation, on January 11, 2013. Defendants provided more than two thousand responsive documents, however they objected to the production of less than one hundred documents based on the ongoing MGCB investigation, as well as based on the deliberative process and/or law enforcement investigatory privileges. Defendants also objected to Plaintiffs' request for a copy of the recording and/or transcript of Moody's sworn statement, given to Special Assistant Attorney General ("SAAG") Doug Baker in March of 2012 under a grant of immunity from Wayne County Circuit Court Judge Timothy Kenny. Defendants claim they do not have custody over any such records. Thereafter, Plaintiffs issued a subpoena to SAAG Baker seeking this information. Defendants likewise object to the production of the transcript because the material sought is protected and confidential under state law.

On March 11, 2013, Plaintiffs filed a Motion to Amend Complaint and yet another Motion for Preliminary Injunction. On April 17, 2013, the Court denied Plaintiffs' Motion for Preliminary Injunction because Plaintiffs sought relief based on incidents involving Moody's son and nephew, neither of whom are named in the Complaint. The Court also denied Plaintiffs' Motion to Amend the Complaint to add Fifth and Sixth Amendment claims against new defendants, MSP Detective, Thomas DeClercq, and MGCB Steward, Robert Coberly. The Court's April 17, 2013 Order concluded that Plaintiffs were dilatory in seeking to amend the Complaint to include allegations that were known to them at the time they filed this action. Further, the Court found that Defendants would be prejudiced by having to defend a Sixth Amendment claim presenting a new legal theory

with only thirty days of discovery remaining.

All of the parties have been deposed including four non-party witnesses. The current scheduling order sets discovery cut-off of May 1, 2013, dispositve motion deadline of June 3, 2013, a settlement conference before Magistrate Judge Hluchaniuk in August of 2013, a final pretrial conference on September 10, 2013 and a trial date of September 17, 2013.

## IV.   LAW & ANALYSIS

### A.   Motion to Extend Discovery

Plaintiffs argue that the current scheduling order should be extended by at least thirty days; the initial discovery period was only four months and has been extended another month by stipulation of the parties and they have not been dilatory. Rather, Defendants have impeded the discovery process resulting in the need for an extension. Plaintiffs assert that they have requested records from the MGCB's 2009-2010 investigation, however Defendants refuse to produce these records. Further, Plaintiffs have sought records from Moody's 2011 immunity hearing and his March 2012 immunized sworn statement, and Defendants have likewise objected to these requests on the grounds that they are privileged, as well irrelevant to the claims before this Court. Plaintiffs also assert that two critical witnesses still need to be deposed, MSP officials Thomas DeClercq and Dave Peltomaa, however Defendants have refused to produce these witnesses for deposition. Lastly, Plaintiffs seek the personnel files of Peltomaa, Post and DeClercq.[2]

---

[2] Plaintiffs also sought all of the records of anonymous, 1-800 number, tip-line communications received by Defendant Gary Post, the deposition of Robert Coberly and Defendant Lessnau's notes from his interviews of Plaintiffs, however Defendants have represented that these requests have been fully responded to, or will be responded to within a few weeks. Thus, these discovery issues are moot. Accordingly, Plaintiffs' Second Motion to Compel Production of Documents [#64] is MOOT.

1.   **Records of MGCB's Investigation and Moody's March 2012 Immunized Statement**

Both the records of the MGCB investigation and Moody's use immunity are the subject of Plaintiffs' first Motion to Compel Production of Documents [#62].  As to the records of the criminal investigation, Defendants have objected to the production of less than one hundred pages out of the more than two thousand already produced in response to Plaintiffs' discovery requests.  Defendants object on the basis that these records are privileged, therefore they are not discoverable under the Federal Rules of Civil Procedure.  Defendants also object to the production of the transcript of Moody's March 2012 immunized statement.  Defendants have filed a Motion to Quash Subpeona for Prosecutor's Investigative Subpoena and for Protective Order asking the Court to quash the February 24, 2013 Subpoena served on SAAG Baker.

The scope of discovery is governed by Fed. R. Civ. P. 26(b)(1).  Under the rule, a party may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1). Defendants argue that the records of the MGCB's investigation are privileged under either the deliberative process privilege or the law enforcement investigatory privilege.

The deliberative process privilege protects from discovery "intra-governmental documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Liuzzo v. United States*, 508 F.Supp. 923, 937 (E.D. Mich. 1981).  In order to invoke the privilege, certain prerequisites must exist, including a "formal claim of privilege lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." *United States v. Reynolds*, 345 U.S. 1, 7-8 (1953); *see also  Nadler v.  United States Dep't of Justice*, 955 F.2d 1479, 1491 (11th Cir.

1992).  First, the information must have been "prepared in order to assist an agency decisionmaker in arriving at his decision." *Nadler.*  955 F.2d at 1491.  Second, the information must play "a direct part in the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters." *Id.*  Further, the privilege is qualified in that it only protects that portion of a report that comprises material of a deliberative or evaluative nature and not those that are merely factual in nature.  *Id.*  However, factual material may be withheld when it "is so inextricably connected to the deliberative material that its disclosure would reveal the agency's decision making processes . . . or when it is impossible to segregate in a meaningful way portions of the factual information from the deliberative information."  *Id.*

The law enforcement investigatory privilege is similar to the deliberative process privilege. To invoke the privilege, three requirements must be met: (1) there must be a formal claim of privilege by the head of the department having control over the requested information; (2) assertion of the privilege must be based on actual personal consideration by that official; and (3) the information for which the privilege is claimed must be specified, with an explanation why it properly falls within the scope of the privilege.  *In re Sealed Case*, 856 F.2d 268, 271 (1988).  Like the deliberative process privilege, the law enforcement investigatory privilege is qualified.  "The public interest in nondisclosure must be balanced against the need of a particular litigant for access to the privileged information."  *Id.*  at 272.  The factors that must be considered when balancing the interests are:

> (1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information having their identities disclosed; (3) the degree to which governmental self-evaluation and consequent program improvement will be chilled by disclosure;; (4) whether the information sought is factual data or evaluative summary; (5) whether the proceeding either pending or reasonably likely

to follow from the incident in question; (6) whether the police investigation has been completed; (7) whether an interdepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether the plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available though other discovery or from other sources; (10) the importance of the information sought to the plaintiff's case.

*Id.*

Here, the Deputy Director of the MGCB, Erik Pedersen, has submitted an affidavit in which he has asserted the deliberative process and law enforcement investigatory privileges as they relate to the roughly one hundred pages of records that Defendants have objected to producing. Defendants have indicated their willingness to submit these documents for an *in camera* review in order to support their claimed privilege. The Court finds that *in camera* inspection is required. Without reviewing the records, the Court cannot determine whether the records contain "material of a deliberative or evaluative nature and not those that are merely factual in nature" and whether the "information sought is factual data or evaluative summary," among other issues this Court must determine to conclude that these records are in fact privileged. Accordingly, the Court will order Defendants to produce these records within seven (7) days from the date of this Order. Upon the Court's *in camera* inspection, the Court will revisit Plaintiffs' requests for these records.

As to Plaintiffs' request for a transcript of Moody's statement or immunity hearing, Defendants argue that the transcript is confidential because the material concerns an ongoing criminal investigation that is protected under State law. Defendants argue that Plaintiffs' February 24, 2013 subpoena seeking this information must be quashed under Fed. R. Civ. P. 45(c)(3)(A)(iii), which requires a Court to quash or modify a subpoena seeking disclosure of "other protected matter[s]." Michigan statute codifies a confidential criminal investigatory technique in the Prosecutor's Investigative Subpoena Act. It prohibits any disclosure until criminal charges are

-8-

filed, and then limits to whom a transcript may be disclosed." MICH. COMP. LAWS § 767A.1 *et seq*. The criminal court issuing an investigative subpoena may also grant immunity to a witness for the felonies under investigation. *See* MICH. COMP. LAWS § 767A.7(1). Defendants argue that under the doctrine of comity and the Tenth Amendment, federal courts have recognized that state criminal matters are afforded deference and protection from the type of interference sought by Plaintiffs' subpoena. Transcripts of investigative subpoenas are only available to a criminal defendant when the state proceeds with criminal charges on "information obtained through investigative subpoenas," among other requirements. MICH. COMP. LAWS § 767A.5, MICH. COMP. LAWS §767A.8; *Truel v. Dearborn*, 291 Mich. App. 125, 132-35; 804 N.W.2d 744 (2010).

Plaintiff Moody maintains that during his hearing and at the time he gave his immunized statement, he was informed that his immunity extended to all state and federal proceedings, administrative and criminal. This is, of course, directly contrary to Defendants contention that Moody was only granted immunity from criminal prosecution. While the Court concludes that the information sought by Plaintiffs is relevant, it further finds that it is privileged under state law and Plaintiffs are not entitled to the transcript of Moody's statement or of the hearing. *See Truel v. City of Dearborn*, 291 Mich. App. at 132-35. The case relied on by Plaintiffs, *State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141 (E.D.N.Y. 2005) is distinguishable from the present matter because it dealt with disclosure of material otherwise protected by the Health Insurance Portability and Accountability Act of 1996, and did not implicate federal/state comity concerns, nor the Tenth Amendment. The Court therefore finds that Plaintiffs are not entitled to this material and Defendants' Motion to Quash the Investigative Subpoena [#73] is therefore granted.

    **2.**     **Non-Parties Thomas DeClercq and Dave Peltomaa**

On April 11, 2013, DeClercq was served with a subpoena to appear and a notice of taking deposition scheduled for April 19, 2013.  Defendants dispute that DeClercq is a critical witness to Plaintiffs' claims.  DeClercq is the officer in charge of the criminal race fixing investigation involving Plaintiffs and others, however he was not involved in the MGCB's investigation, rather his investigation is largely independent of the MGCB's investigation.  Transcripts of the few interviews of Plaintiffs conducted by DeClerq have been produced to the MGCB and Plaintiffs.  It appears the only relevant information DeClerck possesses is the fact that Plaintiffs were under criminal investigation when they invoked their Fifth Amendment rights against self-incrimination at the stewards administrative hearing.

In response, Plaintiffs argue that they face a true road block in the presentation of their case because one of the reasons that the MGCB has not considered lifting Plaintiffs' exclusion orders or considered their applications is because of the ongoing criminal investigation.  Plaintiffs refute the contention that there is an ongoing criminal investigation.  Plaintiffs further insist that the information they seek is crucial to their case "both as to the circumstances of their suspensions and exclusions and whether Defendants, acting in concert with others, are pretending that there is still an ongoing investigation in which they might be charged as an excuse for refusing to rule on their license applications."

Here, the Court concludes that DeClercq is not entitled to a protective order and his testimony is relevant under the Federal Rules of Civil Procedure.  DeClercq interviewed some of the Plaintiffs, provided information to the stewards prior to the administrative hearing, and advised Plaintiffs' counsel that Plaintiffs were to be arrested upon the conclusion of the hearing.  Thus, DeClercq's testimony bears upon the issues related to this matter.  However, while the Court finds

DeClercq's testimony is relevant, the Court will not permit any questioning concerning DeClercq's investigative work related to the criminal investigation into race fixing.

Additionally, the Court will strike Plaintiffs' Emergency Request Regarding the Deposition of Thomas DeClercq. Plaintiff is not entitled to the State Police file. As such, DeClercq's Motion to Strike Plaintiffs' Emergency Motion is granted.

As to Plaintiffs' argument that the testimony of Dave Peltomaa is needed, such an argument is without merit. Peltomaa apparently assigned the criminal investigation of race fixing to DeClercq. Plaintiffs make no argument bearing on the relevance such information has to the claims or defenses herein. Accordingly, extension of the discovery deadline is not warranted based on the need to depose Peltomaa.

### 3.    Defendant Post's, DeClercq's and Lessnau's Personnel Records

Plaintiffs claim that they also need the personnel records of Defendants Lessnau and Post and Non-Party DeClercq as these individuals have retired from the MSP. Plaintiffs fail to establish that the personnel records contain material relevant to their claims. Therefore, they cannot rely on the need for personnel records as a basis for extending the scheduling order.

Thus, the Court finds that Plaintiffs have failed to establish good cause for granting an extension to the discovery deadline. Plaintiffs' Motion to Extend the Discovery Deadline is denied. However, the Court will allow the deposition of DeClercq to proceed. DeClercq's deposition must occur within fourteen days from the date of this Order.

### B.    Plaintiffs' Motion for Leave to File First Amended Complaint

Plaintiffs move for leave to file a First Amended Complaint to add claims of First Amendment retaliation and conspiracy. Plaintiffs argue that through discovery they have learned

that Defendants Richard Kalm, Gary Post, Al Ernst and John Lessnau have acted in concert to

retaliate against Plaintiffs for seeking redress in the courts for the deprivation of their constitutional

rights.  Specifically, Plaintiffs seek to add Count V for violation of their First Amendment rights:

> The acts complained of by Defendants . . . in refusing to grant them an administrative
> appeal of their suspension requested on May 26, 2010 because on that same day they
> filed an injunctive action in the Wayne County Circuit Court . . . in failing and
> refusing to process their requests for reinstatement, relicensure and the lifting of their
> exclusion because of their continuing criticism of Defendants, their threats to sue the
> Defendants in federal court, . . . specifically being told that their applications will not
> be accepted, processed or decided so long as this action is pending; and with regard
> to John Moody, the investigation and subsequent disqualification of his son Daniel
> Moody from his licensure as harness racing training and driver on or about
> December 28, 2012[.]

Plaintiffs also seek to add Count VII, Conspiracy to Violate Civil Rights.  This claim asserts

allegations that Defendant Kalm, acting in concert with Defendants Lessnau and Ernst,

misrepresented that an MGCB investigation is ongoing, manipulated and delayed Plaintiffs' attempts

to be relicensed, and retaliated against Moody by disqualifying his son from participating in harness

racing.

After an answer to the complaint has been filed, Federal Rule of Civil Procedure 15(a)

provides that a party may file an amended complaint "only by leave of court or by written consent

of the adverse party." Fed. R. Civ. P. 15(a).  Rule 15(a) provides that such "leave shall be freely

given when justice so requires." *Id.*  Rule 15 "reinforce[s] the principle that cases should be tried

on their merits rather than the technicalities of pleadings." *Moore v. City of Paducah*, 790 F.2d 557,

559 (6th Cir. 1986).  The Sixth Circuit Court of Appeals has identified various factors that this Court

must consider when determining whether to grant leave to amend:

> Undue delay in filing, lack of notice to the opposing party, bad faith by the moving
> party, repeated failure to cure deficiencies by previous amendments, undue prejudice
> to the opposing party, and futility of amendment are all factors which may affect the

-12-

decision.  Delay by itself is not sufficient reason to deny a motion to amend.  Notice and substantial prejudice to the opposing party are critical factors in determining whether an amendment should be granted.

*Brooks v. Celeste*, 39 F.3d 125, 129 (6th Cir. 1994) (citing *Head v. Jellico Housing Auth.*, 870 F.2d 1117, 1123 (6th Cir. 1989)).  Delay alone is insufficient reason to deny a motion to amend.  *Id.* at 130.  The critical factors to be examined are notice and substantial prejudice.  *Id.*

Defendants respond that permitting amendment at this stage of the proceedings will be severely prejudicial as discovery is now closed.  The Court agrees with Defendants.  Allowing Plaintiffs to amend their complaint now will require the parties to incur additional expense.  Plaintiffs assert that no further discovery will be needed on their proposed First Amendment retaliation and conspiracy claims, however such an argument is plainly without merit.  Defendants will be required to depose all of the Plaintiffs again in order to question them on the facts supporting their new claims.  Contrary to Plaintiffs' argument, Plaintiffs have been dilatory in seeking leave to amend their complaint.  Most of the allegations supporting their retaliation claims occurred prior to the filing of the Complaint.  The only allegations that occurred subsequent to the initiation of this lawsuit relate to the disqualification of Moody's son from harness racing.  This occurred in December of 2012, thus Plaintiffs should have sought amendment to add their retaliation claims no later than January of this year.  However, Plaintiffs did not file the instant motion until May of this year.  This delay, coupled with the substantial prejudice to Defendants, compels this Court to conclude that Plaintiffs are not entitled to the relief sought.  Therefore, Plaintiffs' Motion for Leave to File First Amended Complaint is denied.

## V.   CONCLUSION

For the reasons articulated above, Plaintiffs' Motion to Compel Production of Documents

[#62] is DENIED IN PART.   Plaintiffs are not entitled to Moody's immunized statement nor a transcript of the hearing.  Plaintiffs' request for material from the MGCB's investigation may be discoverable if it is not subject to the deliberative process or law enforcement investigatory privileges.  Defendants shall produce the records subject to the claimed privileges for *in camera* inspection within seven (7) days from the date of this Order.

Plaintiffs' Second Motion to Compel Production of Documents [#64] is DENIED AS MOOT.

Non-Party Thomas DeClercq's Motion for Protective Order and to Quash Subpoena [#67] is DENIED, subject to the above conditions.  Plaintiffs shall depose Thomas DeClercq within fourteen days from the date of this Order.  No questioning concerning DeClercq's investigative work related to the criminal investigation is permitted.  Plaintiff is required to depose DeClercq in Lansing, Michigan and the deposition may not exceed three hours.

Defendants' Motion to Quash Subpoena for Prosecutor's Investigative Subpoena [#73] is GRANTED.

Plaintiffs' Motion to Extend Discovery [#75] is DENIED.

Plaintiff's Motion for Leave to File First Amended Complaint [#76] is DENIED.

Defendants' Motion for Leave to File Excess Pages [#82] is GRANTED.

DeClercq's Motion to Strike Plaintiffs' Emergency Request [#88] is GRANTED.

Plaintiffs may file a motion for summary judgment/declaratory relief no later than June 17, 2013.   A hearing on Defendants' Motion for Summary Judgment and Plaintiffs' Motion for Summary Judgment/Declaratory Relief will be held on August 6, 2013 at 2:00 p.m.

SO ORDERED.

Dated: June 18, 2013                                    /s/Gershwin A Drain
                                                        GERSHWIN A.  DRAIN
                                                        UNITED STATES DISTRICT JUDGE