UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

J<small>OHN</small> M<small>OODY</small>, D<small>ONALD</small> H<small>ARMON</small>,
R<small>ICKY</small> R<small>AY</small> and W<small>ALLY</small> M<small>C</small>I<small>LLMURRAY</small>,

   Plaintiffs,

    v.

M<small>ICHIGAN</small> G<small>AMING</small> C<small>ONTROL</small> B<small>OARD</small>,
R<small>ICHARD</small> K<small>ALM</small>, G<small>ARY</small> P<small>OST</small>, D<small>ARYL</small>
P<small>ARKER</small>, R<small>ICHARD</small> G<small>ARRISON</small>,
B<small>ILLY</small> L<small>EE</small> W<small>ILLIAMS</small>, J<small>OHN</small> L<small>ESSNAU</small>
and A<small>L</small> E<small>RNST</small>,

   Defendant.
_____/

Case No. 12-cv-13593

U<small>NITED</small> S<small>TATES</small> D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
G<small>ERSHWIN</small> A. D<small>RAIN</small>

U<small>NITED</small> S<small>TATES</small> M<small>AGISTRATE</small> J<small>UDGE</small>
S<small>TEPHANIE</small> D<small>AWKINS</small> D<small>AVIS</small>

**O<small>PINION AND</small> O<small>RDER</small> D<small>ENYING</small> P<small>LAINTIFFS</small>' M<small>OTION FOR</small> S<small>UMMARY</small> J<small>UDGMENT</small> [138] <small>AND</small> G<small>RANTING</small> I<small>N</small> P<small>ART</small> D<small>EFENDANTS</small>' M<small>OTION FOR</small> S<small>UMMARY</small> J<small>UDGMENT</small> [144]**

**I. I<small>NTRODUCTION</small>**

  Plaintiffs commenced this action on August 14, 2012. *See* Dkt. No. 1. The Complaint alleges several civil rights claims against the Defendants under 42 U.S.C. § 1983: (1) Deprivation of Liberty Interest Pursuant to the 5<small>th</small> Amendment; (2) Deprivation of Property Without Due Process of Law; and (3) Unconstitutional Conditions. *Id.*

  On October 15, 2015, the Plaintiffs filed their Motion for Summary Judgment. *See* Dkt. No. 138. On November 4, 2015, the Defendants filed their

Motion for Summary Judgment. *See* Dkt. No. 144. A hearing on both motions was held August 9, 2016 at 10:00 a.m. For the reasons discussed herein, the Court will **GRANT** the Defendants' Motion **IN PART**, and **DENY** the Plaintiffs' Motion.

## II. BACKGROUND

In 2010, the Michigan Gaming Control Board ("MGCB") received an anonymous tip that certain harness-racing drivers were fixing races in concert with certain known gamblers. On May 19, 2010, Michigan State Police Detective Thomas DeClercq informed the harness drivers' then-attorney that the harness drivers would be arrested, criminally charged, and arraigned following an informal investigative hearing that had earlier been scheduled for May 20, 2010. At that hearing, the harness drivers asserted their Fifth Amendment right against self-incrimination and refused to answer questions. The following day, the state suspended the Plaintiffs' 2010 licenses to work in horse racing because they failed "to comply with the conditions precedent for occupational licensing in Michigan as outlined in R431.1035." Rule 431.1035 provides, in part, "[t]hat the applicant [for an occupational license, such as the license to race horses] . . . shall cooperate in every way . . . during the conduct of an investigation . . . ." On May 26, the harness drivers appealed their suspensions administratively. The harness drivers subsequently filed a suit for injunctive relief in Wayne County Circuit Court. The MGCB delayed the administrative appeal pending the state-court ruling.

On November 30, 2010, the MGCB issued "Orders of Exclusion" as to each harness driver. The MGCB took the position that it would not lift the Exclusion Orders unless the Plaintiffs answered questions without legal representation. The harness drivers applied for 2011 licenses without success. In response to the harness drivers' letters that sought to appeal "the denial of 2011 occupational license," the MGCB indicated that the exclusion orders precluded their consideration of the harness drivers' applications. Letter from Alexander Ernst, Horse Racing Manager, to John R. Moody (Nov. 16, 2011) (herein referred to as "Ernst Letter").

In August 2012, the harness drivers filed this suit under 42 U.S.C. § 1983, seeking damages, costs, fees, and injunctive and declaratory relief. On November 27, 2013, the Court granted the MGCB's motion for summary judgment and denied the harness drivers' motion for partial summary judgment. The Court held that the Eleventh Amendment barred plaintiffs' claims for money damages against MGCB and its officials, and that the MGCB was entitled to qualified immunity because the harness drivers failed to identify a violation of a constitutional right. *Moody v. Michigan Gaming Control Board*, No. 12-cv-13593, 2013 WL 6196947 (E.D. Mich. November 27, 2013). The harness drivers appealed.

The Sixth Circuit affirmed in part and reversed in part the judgment of the Court. The Sixth Circuit held that the suspension and exclusion of the harness-

drivers constituted a violation of the Plaintiffs' Fifth-Amendment rights against self-incrimination. *Moody v. Michigan Gaming Control Board*, 790 F.3d 669, 673 (6th Cir. 2015). The Sixth Circuit further held there was a genuine dispute of material fact over whether the Plaintiffs were given due process before being excluded. *Id.* at 680. The case was remanded for further proceedings. Shortly afterward, the parties filed these cross-motions for summary judgment.

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quotations omitted). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. DISCUSSION

### A. Eleventh Amendment Sovereign Immunity

As an initial matter, neither party disputes that the doctrine of sovereign immunity protects the Michigan Gaming Control Board from suits for money damages. The Sixth Circuit did not reverse this holding.

### B. Fifth Amendment Qualified Immunity

The Sixth Circuit has already held that the Plaintiffs' Fifth Amendment rights were violated. *Moody*, 790 F.3d at 673. The Sixth Circuit remanded the case back to the District Court to determine whether the Fifth Amendment violation involved a clearly established right which a reasonable person in the Defendants' position would have known. *Id.* "[T]he objective (albeit fact-specific) question [is] whether a reasonable officer could have believed" the actions taken "to be lawful, in light of clearly established law . . . ." *Anderson*, 483 U.S. at 641.

The Plaintiffs argue that the right to assert the Fifth Amendment in an administrative proceeding without suffering costly sanctions has been clearly established. Dkt. No. 156 at 22–25 (Pg. ID No. 4042–45). The Defendants, on the other hand, define the right as being more specific. The Defendants contend that a regulatory agency's punishment of a licensee who, based on the Fifth Amendment, refused to answer regulatory-related questions has never before been held to be a violation of the Fifth Amendment. Dkt. No. 144 at 21 (Pg. ID No. 3710).

The Supreme Court has "repeatedly told courts . . . not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Occupy Nashville v. Haslam*, 769 F.3d 434, 443 (6th Cir. 2014). "For a right to be clearly established, '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. [I]n the light of pre-existing law the unlawfulness must be apparent.' " *Id.* (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). "In other words, 'existing precedent must have placed the statutory or constitutional question . . . beyond debate.' " *Id.* (quoting *Plumhoff v. Rickard,* 134 S.Ct. 2012, 2023 (2014) (internal quotation marks omitted)). "[B]inding precedent from the Supreme Court, the Sixth Circuit, [or] the district court itself" can provide such clarity; persuasive authority from "other circuits that is directly on point" may also demonstrate that a law is clearly established. *Holzemer v. City of Memphis*, 621 F.3d 512, 527 (6th Cir. 2010). Notwithstanding those helpful indicators, "[a] court need not have previously held illegal the conduct in the precise situation at issue because officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Sutton v. Metro. Gov't of Nashville,* 700 F.3d 865, 876 (6th Cir. 2012) (internal quotation marks omitted).

It is clear that licensees may not be required to choose between forfeiting their livelihood and criminal prosecution. *See Spevack v. Klein*, 385 U.S. 511 (1967). However, employers may take disciplinary actions against public employees for refusal to divulge information, as long as they are not required to waive immunity.

In *Uniformed Sanitation Men Ass'n., Inc. v. Comm'r. of Sanitation of City of New York*, Justice Harlan made note that there was a process for "public officials [to] be discharged and lawyers disciplined for refusing to divulge appropriate authority information pertinent to the faithful performance of their offices." 88 S. Ct. 1920, 1921 (1968) (Harlan, J., concurring). In *Gardner v. Broderick*, the Supreme Court held that a police officer may be discharged for refusing to answer questions about the performance of his official duties, as long as the officer is not required to waive immunity. *Gardner v. Broderick*, 392 U.S. 273, 279 (1968).

This reasoning was expanded to include not only state employees, but also contractors in *Lefkowitz v. Turley*, 414 U.S. 70 (1973). In *Lefkowitz*, the U.S. Supreme Court held that a New York law, allowing for the termination of public contracts if a contractor refuses to waive immunity or to testify concerning his state contracts, violated the Fifth Amendment. The *Lefkowitz* Court also noted, however, that "given adequate immunity, the State may plainly insist that employees either

answer questions under oath about the performance of their job or suffer the loss of employment." *Id.* at 84.

In *Lefkowitz v. Cunningham*, the U.S. Supreme Court held a New York statute, which automatically disqualified a person from holding office within a political party for five years if he or she refused to waive immunity, violated the Fifth Amendment. 431 U.S. 801, 806 (1977). The Court held that the "government cannot penalize assertion of the constitutional privilege against compelled self-incrimination by imposing sanctions to compel testimony which has not been immunized." *Id.*

In all of these cases, the plaintiffs were required to waive immunity, else face termination. What was not clearly established in this Circuit was whether the State was required to *offer* immunity in the first place.

In *Spevack*, the threat of disbarment, without the offer of immunity, was enough to find a Fifth Amendment violation. *Spevack*, 385 U.S. at 514. However, in *Gardener*, the Supreme Court held that an employee could be fired for his refusal to answer questions about his performance if he was not "*required to waive his immunity . . . .*" *Gardner*, 392 U.S. at 278 (emphasis added). Accordingly, there appeared to be an open question regarding the actions required of the State to avoid violating the Fifth Amendment. In short, is the State required to *offer* immunity

before disciplining a public employee or licensee? Or is merely *not requiring its waiver* sufficient to respect the right?

This Court relied on the language in *Gardner* in its prior Opinion and Order when it found that the Defendants had not committed a constitutional violation. *Moody*, 2013 WL 6196947 at *8. As the Court noted then, other federal appellate courts have done the same. *See Aguilera v. City of Los Angeles*, 510 F.3d 1161, 1171 (9th Cir. 2007) ("In *Gardner*, the Court noted that the constitutional violation arose not when a public employee was compelled to answer job-related questions, but when that employee was *required to waive his privile*ge against self-incrimination while answering his employer's legitimate job-related questions.") (emphasis added); *Wiley v. Mayor & City Council of Baltimore*, 48 F.3d 773, 777 (4th Cir. 1995) ("This language strongly indicates that forcing a public employee to answer potentially incriminating job-related questions does not implicate the Fifth Amendment *unless* the employee *is also compelled* to waive his privilege.").

At oral argument, the Plaintiffs argued that the *Gardner* line of cases only applied to public employees, and not to licensees. However, the Sixth Circuit's opinion made clear that the same standard applies to both classes of individuals. *Moody*, 790 F.3d at 676 n.12.

With *Moody*, the Sixth Circuit has now established once and for all that the State is required to offer immunity before it may discharge an employee, or revoke

-9-

a state-issued license, for standing on Fifth Amendment rights. However, before the Sixth Circuit's decision in *Moody*, a reasonable officer could have believed, as the Court did, that they were not required under the Fifth Amendment to offer immunity. Therefore, because a reasonable officer would have believed his actions to be lawful, the rights at issue were not clearly established. Accordingly, the Defendants are entitled to qualified immunity on these claims.

### C. Due Process Claims

The Court must also analyze whether the Defendants or Plaintiffs are entitled to summary judgment on the Plaintiffs' Procedural Due Process claims. In this case, the due process rights center on post-deprivation relief. It is established law that a suspended harness-horse trainer, and by extension a harness driver, is entitled to "a prompt postsuspension hearing" upon request. *Barry v. Barchi*, 433 U.S. 55, 63 (1979). As the Sixth Circuit affirmed, Plaintiffs' post-suspension due process rights were not violated. Additionally, under Michigan law "[a]ny person who is ordered to be . . . excluded . . . shall, upon written request, have the right to a hearing *de novo* before the commissioner to review the order . . . ." MICH. ADMIN. CODE R. 431.1130(3). Thus, that Plaintiffs' post-exclusion due process rights were clearly established under Michigan law is not up for debate. The Court need only address the issue of whether those due process rights were violated.

The Sixth Circuit held that "there is a disputed issue of material fact as to whether the defendants denied plaintiffs the [post-exclusion] process they were due or whether the plaintiffs failed to seek that process." *Moody*, 790 F.3d at 680. The Sixth Circuit found that the "harness drivers would fail on this due-process claim . . . if they had failed to request a hearing." *Id.* at 679. The Sixth Circuit also found that a reasonable juror "might conclude that the MGCB should have construed [their 2011 license applications] as requests for the hearings due to them under the federal constitution and state regulations." *Id.* at 680. Despite this holding, both sides still argue they are entitled to summary judgment.

### a. *Defendants' Motion for Summary Judgment*

Defendants argue that they are still entitled to summary judgment because "the record clearly shows that the MGCB did not construe the drivers' post-exclusion license applications as appeal-hearing requests." Dkt. No. 144 at 27–28 (Pg. ID No. 3716–17). This argument, frankly, was flatly rejected by the Sixth Circuit. *See Moody*, 790 F.3d at 680 ("After all, the MGCB seemed to construe the harness drivers' applications for 2011 licenses as an attempt[t] to recreate either an administrative or judicial appeal process.") (quotations and citations omitted).

Defendants next argue that they are entitled to summary judgment because the Plaintiffs were eventually given an appeal hearing on April 25, 2013, following the Plaintiffs' hearing request that was made on November 27, 2012. Dkt. No. 144

-11-

at 29–30 (Pg. ID No. 3717–18). This argument necessarily ignores the fact that the Sixth Circuit found there to be a dispute of fact regarding whether the 2011 license applications constituted hearing requests. Neither party disputes that the 2011 license applications were not answered with a hearing. Defendants' argument is irrelevant to the question currently before the Court.

Finally, the Defendants argue that they are still entitled to qualified immunity because any violation did not involve a clearly established right that a reasonable person would have known. Dkt. No. 144 at 30–31 (Pg. ID No. 3719–20). Specifically, Defendants argue that "[t]he drivers can cite no analogous case law that would have placed the regulators on notice that . . . applying for a license would constitute a hearing request." *Id.* This argument mischaracterizes the Sixth Circuit's Opinion.

As stated above, it has been clearly established that a horse-driver is entitled to a post-exclusion hearing upon request. *Moody*, 790 F.3d at 678–679 (citing *Barry*, 443 U.S. at 63–64); MICH. ADMIN. CODE R. 431.1130(3). The Sixth Circuit further held that "[i]f the MGCB, in point of fact, did construe the harness drivers' applications as written requests for appeal, then the harness drivers were due the process of a hearing concerning their Exclusion Orders." *Id.* at 680. Therefore, the question is not whether Defendants were *on notice* that the subsequent applications were requests for hearings. The question is whether the Defendants "did, in point

of fact" construe the applications as requests for hearings, and subsequently deny the hearings. Accordingly, Defendants are not entitled to summary judgment on these claims.

### b. *Plaintiffs' Motion for Summary Judgment*

Plaintiffs similarly argue that they are entitled to summary judgment because their November 27, 2012 hearing request was not granted until April 25, 2013. Plaintiffs argue that their due process rights were violated because the hearing was well after the 14 day time window set forth by the Michigan regulations. Dkt. No. 138 at 19 (Pg. ID No. 3605). Those requests were made after the filing of this complaint. The Complaint has not been amended to reflect these claims. Thus, this claim is not properly before the Court.

### D. Personal Involvement Defenses

Defendants argue that they are entitled to summary judgment on the Plaintiffs' 1983 claims because they have raised personal involvement defenses that were overlooked by the Sixth Circuit. Dkt. No. 144 at 16–18 (Pg. ID No. 3705–07). Defendants have raised personal involvement defenses for Defendants Lessnau, Ernst, Post, Kalm, Parker, Garrison and Williams.

Personal involvement defenses are often reserved for supervisory officials. The Sixth Circuit has held that "[b]ecause § 1983 liability cannot be imposed under a theory of *respondeat superior*, proof of personal involvement is required for a

supervisor to incur personal liability." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citing *Miller v. Calhoun County*, 408 F.3d 803, 817 n. 3 (6th Cir. 2005)). "At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

As described above, although the Plaintiffs' Fifth Amendment rights were violated by the issuance of suspensions and exclusion orders, those rights were not clearly established, and no liability may be found. Thus, the only violation that may be found is the Due Process violation.

Defendants Kalm, Post, Parker, Garrison, and Williams are only alleged to have been involved personally in the Fifth Amendment claim. They do not appear to be personally involved in the Due Process violation. Seeing as the Defendants are entitled to Qualified Immunity on this claim, the Court need not discuss their personal involvement.

However, Defendant Ernst was recognized by the Sixth Circuit as not only receiving the Plaintiffs' 2011 license applications, but possibly construing them as hearing requests. *Moody*, 790 F.3d at 680. He is further alleged to have told Plaintiffs that they could not appeal their Exclusion Orders. *See* Dkt. No. 156 at 19 (Pg. ID No. 4039). Furthermore, Defendant Lessnau is alleged to have issued a

report recommending against lifting Plaintiff Ray's suspension. Dkt. No. 156 at 18 (Pg. ID No. 4038). A reasonable juror could conclude that both Lessnau and Ernst were personally involved in the alleged due process violation. Accordingly the defense is denied as to these two defendants.

### E. Quasi-Judicial Immunity

Defendants argue that the stewards are entitled to quasi-judicial immunity because of the impartial role they played in the license suspension and exclusion. Dkt. No. 144 at 31 (Pg. ID No. 3720).

The factors to be considered in determining whether an official is entitled to quasi-judicial immunity are:

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Friedman v. Hall*, 843 F.2d 1391 (6th Cir. 1988) (citing *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985)). "Persons such as judges, prosecutors acting in their adversarial capacity, and witnesses are absolutely immune from civil rights suit for damages." *Id.*

The Sixth Circuit has indicated that racing stewards are likely to be entitled to quasi-judicial immunity. *See id.* However, seeing as the Defendant Stewards are already entitled to qualified immunity, the Court finds no need to rule on this issue.

## V. CONCLUSION

For the reasons discussed above, the Court **DENIES** the Plaintiffs' Motion for Summary Judgment [138], **GRANTS** the Defendants' Motion for Summary Judgment **IN PART** with respect to Plaintiffs' Fifth Amendment Claim, and **DENIES IN PART** the Defendants' Motion with respect to Plaintiffs' Due Process.

IT IS SO ORDERED.

Dated: August 15, 2016　　　　　　　s/Gershwin A. Drain  
Detroit, MI　　　　　　　　　　　　HON. GERSHWIN A. DRAIN  
　　　　　　　　　　　　　　　　　United States District Court Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 15, 2016.

　　　　　　　　　　　　　　　　　s/Teresa McGovern  
　　　　　　　　　　　　　　　　　Teresa McGovern  
　　　　　　　　　　　　　　　　　Case Manager Generalist