UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN MOODY, ET AL.,

Plaintiffs,                          Case No. 12-cv-13593

v.                          UNITED STATES DISTRICT COURT JUDGE
                                    GERSHWIN A. DRAIN

MICHIGAN GAMING CONTROL
BOARD, ET AL.,                    UNITED STATES MAGISTRATE JUDGE
                                    STEPHANIE DAWKINS DAVIS
Defendants.
_____/

## OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#206] AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT [#201]

### I. INTRODUCTION

For the third time, Plaintiffs' and Defendants' cross-motions for summary judgment are before the Court. Plaintiffs initiated this action on August 14, 2012, alleging several civil rights violations under 42 U.S.C. § 1983. Dkt. No. 1. Since then, this case has been appealed to the Sixth Circuit and sent back on remand on two different occasions. Dkt. No. 134; Dkt. No. 195.

Present before the Court are Plaintiffs' Motion for Summary Judgment [#201], filed on July 19, 2018, and Defendants' Motion for Summary Judgment [#206], filed on August 13, 2018. After reviewing the briefs, the Court finds that no hearing on the Motions is necessary. *See* E.D. Mich. LR 7.1(f)(2). For the

reasons set forth below, the Court will GRANT Defendants' Motion [#206] and DENY Plaintiffs' Motion [#201].

## II. FACTUAL BACKGROUND

Plaintiffs John Moody, Donald Harmon, Ricky Ray, and Wally McIllmurray, Jr. ("Plaintiffs") are harness-racing drivers in the state of Michigan. Dkt. No. 1, p. 3 (Pg. ID 3). In 2010, Defendant Michigan Gaming Control Board ("MGCB") launched an investigation into claims of race-fixing, and Plaintiffs were among several harness-racing drivers subpoenaed to appear before a panel of stewards from the Michigan Racing Commission to answer these allegations. *Id.* at pp. 3-4 (Pg. ID 3-4).

The day before Plaintiffs were scheduled to appear before the stewards, Michigan State Police Detective Thomas DeClercq contacted Plaintiffs' attorney and informed him that Plaintiffs would be arrested, criminally charged, and arraigned following their hearings. Dkt. No. 90, p. 2 (Pg. ID 1447). On the advice of counsel, Plaintiffs chose to assert their Fifth Amendment rights against self-incrimination and refused to answer any of the stewards' questions at the hearings. *Id.* Plaintiffs also refused to produce any of their financial records. *Id.*

Immediately following the hearings, the stewards -- Defendants Daryl Parker, Richard Garrison, and Billy Lee Williams ("Defendant Stewards") -- voted unanimously to suspend Plaintiffs' harness-racing licenses through the end of the

calendar year. Dkt. No. 206, p. 15 (Pg. ID 4372). The reason being that Plaintiffs failed to cooperate during the hearings, as required by Michigan Horse Racing Law § 431.1035(2)(d). *Id.* That section, in relevant part, provides, "the applicant [for an occupational license, such as a license to race horses] . . . shall cooperate in every way . . . during the conduct of an investigation, including responding correctly . . . to all questions pertaining to racing matters." Dkt. No. 1, p. 5 (Pg. ID 5). Because Plaintiffs chose to invoke their Fifth Amendment rights, as opposed to answering any questions at the hearings, Defendant Stewards found that Plaintiffs had violated § 431.1035(2)(d). Dkt. No. 206, p. 15 (Pg. ID 4372).

On May 26, 2010, Plaintiffs filed an administrative appeal of their suspensions with Defendant MGCB. Dkt. No. 90, p. 2 (Pg. ID 1447). At the same time, Plaintiffs filed an action in the Wayne County Circuit Court seeking injunctive relief. *Id.* Consequently, Defendant MGCB had to stay the administrative appeal pending the state court ruling. Dkt. No. 206, p. 17 (Pg. ID 4374).[1]

While the state court case was pending, Defendant Richard Kalm -- Racing Commissioner and Executive Director of the MGCB -- issued orders of exclusion that prohibited Plaintiffs from accessing any state-regulated facilities and tracks. Dkt. No. 206, p. 17 (Pg. ID 4374). These orders, issued on November 30 and

---

[1] The Michigan Court of Appeals ultimately denied Plaintiffs' request for injunctive relief on July 21, 2011. Dkt. No. 90, p. 3 (Pg. ID 1448).

December 7, 2010, stated that Plaintiffs were excluded "based on the continued and ongoing administrative investigation into race fixing, information that [Plaintiffs were] involved in race fixing, and [their] failure to cooperate." *See id.*; Dkt. No. 90-14.

In August 2011, Plaintiffs Moody, McIllmurray, and Harmon attempted to reapply for their harness-racing licenses. Dkt. No. 213, p. 19 (Pg. ID 4471). They were unsuccessful. In letters addressed to these three Plaintiffs, dated September 15, 2011, Defendant Al Ernst -- Horse Racing Manager for the MGCB -- wrote the following: "Neither you nor your attorney filed an appeal to the Order of Exclusion and the time [to] appeal the Order has passed. Due to your exclusion for failing to cooperate we cannot consider your application." Dkt. No. 85-16. Defendant Ernst wrote to the three Plaintiffs again on November 16, 2011 stating: "The time to appeal the Exclusion Order has long passed. By filing an application it seems that you are attempting to recreate either an administrative or judicial appeal process that has been exhausted." Dkt. No. 98-16.

On January 13, 2012, Plaintiffs received letters from Eric Pederson of the MGCB again explaining why their licenses were suspended in 2010 and informing them that the reason their license applications have been rejected is because of their exclusion orders. Dkt. No. 98-17. Pederson's letter reiterated that Plaintiffs

had not appealed the exclusion orders. *Id.* But Pederson noted that Plaintiffs could now pursue an administrative appeal of their suspensions. *Id.*

On November 27, 2012, Plaintiffs formally requested an administrative appeal of both their suspensions and their exclusion orders. Dkt. No. 206, p. 17 (Pg. ID 4374); Dkt. No. 85-14. After ongoing discussions with Defendants, Plaintiffs received an administrative hearing on April 25, 2013. Dkt. No. 206, p. 17 (Pg. ID 4374).

### III. PROCEDURAL BACKGROUND

This case is before the Court for a third time after being sent back on remand by the Sixth Circuit on two different occasions. Plaintiffs first moved for summary judgment on June 17, 2013, arguing Defendants subjected them to unconstitutional conditions and denied them due process under the law by (1) punishing them for invoking their Fifth Amendment rights against self-incrimination, (2) suspending their harness-racing licenses and excluding them from the harness-racing industry without a proper hearing, (3) denying them the right to appeal their exclusion orders, and (4) denying them the right to reapply for their harness-racing licenses. Dkt. No. 90. Defendants filed a cross-motion for summary judgment, arguing they were entitled to qualified immunity. Dkt. No. 85. At the time, the Court agreed. Dkt. No. 120.

In a November 27, 2013 Opinion and Order, the Court granted Defendants motion for summary judgment, holding: (1) Plaintiffs were not subjected to unconstitutional conditions when they were given the choice to either invoke their rights against self-incrimination or face suspension, because any statements they made would have been protected by automatic immunity if they were later tried in a criminal court; (2) Plaintiffs had adequate notice and an opportunity to be heard before their harness-racing licenses were suspended, thereby negating any procedural due process concerns; and (3) Plaintiffs had no property interest in the mere expectation of being licensed in the horse-racing industry. *Id.* Plaintiffs appealed these rulings to the Sixth Circuit. Dkt. No. 134.

On June 16, 2015, the Sixth Circuit issued an opinion reversing the Court's summary judgment ruling in part ("*Moody I*"). *Id.* The Sixth Circuit held, (1) Plaintiffs' rights against self-incrimination were violated because the state had not affirmatively immunized them from criminal prosecution and such immunity did not apply automatically; (2) Plaintiffs did receive adequate procedural due process with respect to the suspension of their harness-racing licenses, but whether they did with respect to their exclusion orders was an open question; and (3) Plaintiffs had a property interest in their harness-racing licenses. *Id.* The Sixth Circuit then remanded the case back to this Court to resolve three questions: (1) Did the violation of Plaintiffs' Fifth Amendment self-incrimination rights involve a

violation of clearly established rights? (2) If so, should a person in Defendants'
position have known about these clearly established rights? (3) Did Defendants
construe Plaintiffs' 2011 license applications as requests for an administrative
appeal of their exclusion orders, and thus, deny Plaintiffs procedural due process
by not scheduling a prompt appeals hearing? *Id.*

After the case was remanded to this Court, Plaintiffs and Defendants again
filed cross-motions for summary judgment.   Dkt. No. 138; Dkt. No. 144.   On
August 15, 2016, the Court issued an Opinion and Order denying Plaintiffs'
motion and granting Defendants' motion in part.   Dkt. No. 172.   The Court held,
(1) the violation of Plaintiffs' Fifth Amendment rights against self-crimination did
not involve clearly established rights, and (2) there was a genuine dispute of
material fact surrounding whether Defendants construed Plaintiffs' 2011 license
applications as requests for an administrative appeal of their exclusion orders.   *Id.*
Subsequently, the case went back up to the Sixth Circuit for a second time.   Dkt.
No. 195.

On September 11, 2017, the Sixth Circuit issued an opinion reversing the
Court's findings on Plaintiffs' Fifth Amendment self-incrimination claims,
concluding that this right was clearly established at the time of the violation
("*Moody II*").   *Id.* at p. 14 (Pg. ID 4303).   The Sixth Circuit, however, affirmed the
Court's findings on Plaintiffs' procedural due process claims surrounding the

appeal of their exclusion orders. *Id.* at p. 10 (Pg. ID 4299). Thereafter, the case was sent back to this Court on remand for what hopes to be a final time.

## IV. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255. No genuine dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## V. DISCUSSION

Relying on the Sixth Circuit's opinion in *Moody II*, which concluded that Plaintiffs' rights against self-incrimination were clearly established at the time they were violated, Plaintiffs move for summary judgment on their Fifth Amendment

claims. Dkt. No. 201, pp. 14, 16 (Pg. ID 4336, 38). In addition, Plaintiffs move for summary judgment on their procedural due process claims, arguing it is undisputed that Defendants construed Plaintiffs' 2011 license applications as requests for an administrative appeal of their exclusion orders. *Id.* Because Defendants failed to schedule a prompt hearing following these requests, Plaintiffs maintain that this was a violation of their procedural due process rights. *Id.*

Defendants also move for summary judgment on Plaintiffs' Fifth Amendment self-incrimination claims, asserting quasi-judicial immunity. Dkt. No. 206., p. 18 (Pg. ID 4375). Further, Defendants oppose Plaintiffs' request for summary judgment on the procedural due process claims, arguing that a genuine dispute of material fact still remains surrounding whether Defendants construed Plaintiffs' 2011 license applications as requests for an administrative appeal of their exclusion orders. Dkt. No. 213, p. 14 (Pg. ID 4466).

Here, the Court finds that (1) Defendants are entitled to quasi-judicial immunity on Plaintiffs' Fifth Amendment self-incrimination claims, and (2) a genuine dispute of material fact remains surrounding whether Defendants construed Plaintiffs' 2011 license applications as requests for an appeal of their exclusion orders.

**A. Defendants are Entitled to Quasi-Judicial Immunity on Plaintiffs' Fifth Amendment Self-Incrimination Claims.**

1. <u>Defendants Gary Post, John Lessnau, and Al Ernst Lacked the Sufficient Personal Involvement Necessary to be Held Liable on Plaintiffs' Fifth Amendment Self-Incrimination Claims.</u>

As an initial matter, Plaintiffs' Fifth Amendment claims stem from the decisions to suspend Plaintiffs' harness-racing licenses and exclude them from state-regulated facilities and tracks. Not all of the Defendants in this case were involved in those decisions; rather, only Defendant Stewards and Defendant Kalm took part in these actions. Defendants Post, Lessnau, and Ernst had no such involvement, and Plaintiffs have failed to put forth any arguments suggesting that they were involved.[2] Because a defendant's liability in a § 1983 suit depends on the individual's personal actions, Defendants Post, Lessnau, and Ernst are entitled to summary judgment on Plaintiff's Fifth Amendment claims. *See Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008).

2. <u>Defendant Stewards did not Act in the Clear Absence of All Jurisdiction.</u>

Another preliminary matter the Court must address is whether Defendant Stewards had jurisdiction over Plaintiffs' disciplinary hearings, such that they can assert the defense of quasi-judicial immunity. Plaintiffs cite to *Stump v. Sparkman*

---

[2] Plaintiffs chose not to file a reply to Defendants' response to Plaintiffs' Motion for Summary Judgment.

for the proposition that absolute immunity does not apply where one acts in the "clear absence of all jurisdiction." *See* 435 U.S. 349, 356-57 (1978). Here, Plaintiffs argue that Defendant Stewards were not officially appointed as stewards, and thus, were operating outside of their jurisdiction when they sanctioned Plaintiffs for their alleged wrongdoings. *Id.* at p. 10 (Pg. ID 4518). Plaintiffs rely on Michigan Horse Racing Law § 431.306(1), which provides:

> The racing commissioner shall appoint 2 deputy commissioners and 3 state stewards of racing as special deputies for each licensed race meeting in the state. For the purpose of carrying out this act, the racing commissioner may delegate the performance of his or her duties to the deputy commissioners or special deputies.

*Id.* at p. 9 (Pg. ID 4517). Plaintiffs claim that the three official stewards at the time of their suspension hearings were Eric Pertunnen, Pete O'Hare, and Pat Hall.[3] *Id.* at p. 10 (Pg. ID 4518). Plaintiffs thus argue that the racing commissioner could not delegate his power to Defendant Stewards until he first removed Pertunnen, O'Hare, and Hall from their respective positions, which he could only do for good cause. *Id.*

Defendants respond by arguing that Plaintiffs read § 431.306(1) too narrowly. Dkt. 219, p. 5 (Pg. ID 4535). Defendants assert that the racing commissioner was permitted to designate three state stewards *for each licensed race meeting in the state*. *Id.* (emphasis added). It follows, Defendants argue, that

---

[3] None of these individuals are parties to this action.

it would be impossible to conduct multiple race meets on the same day if the racing commissioner could only designate a total of three state stewards. *Id.* Hence, Defendants maintain that the racing commissioner could designate as many special deputy stewards as he deemed necessary to effectively regulate the industry. *Id.*

Notwithstanding § 431.306(1), it is certainly reasonable to believe that Defendant Stewards had the authority to carry out the delegated powers of the racing commissioner and had jurisdiction over Plaintiffs' suspension hearings. Indeed, Plaintiffs responded to summonses to appear before Defendant Stewards. Further, Defendant Stewards conducted hearings, in which Plaintiffs participated, and issued decisions, in which Plaintiffs later appealed. Plaintiffs' Complaint even references Defendant Stewards' authority. *See* Dkt. No. 1, p. 2 (Pg. ID 2).[4]

Moreover, Defendant Stewards -- official appointees or not -- performed the exact same functions as special deputy stewards and were bound by and operated within the same procedural rules. Plaintiffs do not argue that special deputy stewards would be without jurisdiction over their hearings, such as to bar them from raising the defense of quasi-judicial immunity. The Court is therefore not

---

[4] "Defendants Daryl Parker, Richard Garrison, and Billy Lee Williams (collectively the 'Stewards') were at times relevant to this complaint, appointed as 'stewards' under the Michigan Horse Racing Law. As such, MGCB authorized the Stewards to conduct an investigation of the individual Plaintiffs; and, at the direction and under the control of MGCB, Post and Kalm, the Stewards were responsible for issuing the illegal orders suspending Plaintiffs. The Stewards are sued in their individual capacity because, while acting under the color of state law, the Stewards caused the deprivation of Plaintiffs' federal constitutional rights."

convinced that Defendant Stewards should be prevented from raising this defense. *See Bush v. Rauch*, 38 F.3d 842, 847 (6th Cir. 1994) (holding a court "looks to the 'nature of the function performed, not the identity of the actor who performed it.'") (quoting *Buckley v. Fitzsimmons*, 113 S. Ct. 2606, 2613 (1993)). Accordingly, the Court finds that Defendant Stewards were not acting in the *clear absence* of all jurisdiction. (emphasis added).

3. <u>Defendant Stewards' and Defendant Kalm's Roles in Suspending and Excluding Plaintiffs from the Harness-Racing Industry were Functionally Equivalent to that of a Judge, such that they are Entitled to Quasi-Judicial Immunity.</u>

Defendants argue that Defendant Stewards and Defendant Kalm are entitled to summary judgment on Plaintiffs' Fifth Amendment claims because they are shielded by quasi-judicial immunity. Dkt. No. 206, pp. 10-11 (Pg. ID 4367-68). The Court will agree.

The Supreme Court has recognized that it is "a general principle of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, should be free to act upon his own convictions, without apprehension of personal consequences to himself." *Stump*, 435 U.S. at 355. To that end, "judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in

excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." *Id.* at 355-56.

The Sixth Circuit has "extended absolute immunity to some officials who are not judges, but who 'perform functions closely associated with the judicial process.'" *Flying Dog Brewery, LLLP v. Michigan Liquor Control Comm'n*, 597 Fed. Appx. 342, 347 (6th Cir. 2015) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985). The burden, importantly, is on the officials seeking quasi-judicial immunity to demonstrate that public policy requires an exemption of this scope. *Id.* at 348. The following non-exhaustive list of factors, characteristic of the judicial process, guides the inquiry: (1) the need to assure that the individual can perform their functions without harassment or intimidation; (2) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (3) insulation from political influence; (4) the importance of precedent; (5) the adversary nature of the process; and (6) the correctability of error on appeal. *Id.*

For example, in *Friedman v. Hall*, the Sixth Circuit suggested that racing stewards, such as we have here, were entitled to quasi-judicial immunity for their role in the plaintiff's disciplinary proceeding. 1988 WL 31553, at *3, n.4 (6th Cir. April 11, 1988). In that case, plaintiff sued the defendants in their capacity as Michigan racing stewards after they suspended his occupational license following

an evidentiary hearing. *Id.* at *1. The district court granted the defendants' motion for summary judgment on the basis of quasi-judicial immunity. *Id.* at *2. The district court based its decision on the fact that (1) racing stewards were neutral and needed to be free from harassment, (2) there were procedural safeguards in place for the plaintiff's benefit, and (3) there was a strong public interest in the strict regulation of horse racing. *Id.* The plaintiff subsequently appealed the district court's ruling to the Sixth Circuit.

The Sixth Circuit affirmed the district court's ruling, though on alternative grounds. *Id.* at *3. Nevertheless, the Sixth Circuit concluded that the functions of a racing steward "in many ways corresponds to that of a prosecutor in his adversarial role and that of a judge in conducting proceedings." *Id.* The Sixth Circuit then emphasized that "[a]lthough we do not decide in this case whether defendants are entitled to absolute immunity, absolute immunity may be warranted." *Id.* at *3, n.4

The Eighth Circuit took this a step further in *VanHorn v. Oelschlager*, affirmatively granting members of the Nebraska State Racing Commission, and its Executive Secretary, quasi-judicial immunity for their role in the plaintiffs' disciplinary proceedings. 457 F.3d 844, 847-48 (8th Cir. 2006). In doing so, the court was ultimately persuaded by three factors: (1) the Commission's powers in conducting disciplinary proceedings were similar to judicial powers, (2) the

Commission's actions were likely to result in lawsuits from disappointed parties, and (3) sufficient safeguards existed to control unconstitutional conduct; specifically, aggrieved parties could file an appeal with the state court. *Id.* at 848. In closing, the Eight Circuit stressed, "To the extent that the [Commission] weighed evidence, made factual determinations, determined sanctions, and issued [a] written decision[ ], we conclude that these duties are functionally comparable to the duties performed by the courts." *Id.* (quoting *Dunham v. Wadley*, 195 F.3d 1007, 1011 (8th Cir. 1999)).

In contrast, Plaintiffs cite to *Scott v. Schmidt*, where the Seventh Circuit expressed reservation about extending quasi-judicial immunity to racing stewards in the state of Illinois. 773 F.2d 160, 165, n.7 (7th Cir. 1985). There, the court was primarily concerned with the fact that the stewards made their decisions without the benefit of a formal due process hearing. *Id.* This, the court noted, could lead to a greater likelihood of error or bias in decision making. *Id.* Ultimately, however, the Seventh Circuit left the issue unresolved, opting instead to decide the case on other grounds. *Id.*

Here, the Court finds *Friedman* and *VanHorn* instructive, and concludes that Defendant Stewards and Defendant Kahn are entitled to quasi-judicial immunity for their roles in Plaintiffs' disciplinary proceedings. *See* 1988 WL 31553; 457 F.3d 844. First, there is undoubtedly a need to assure racing stewards and racing

commissioners that they can perform their jobs without harassment or intimidation. *See Flying Dog Brewery, LLLP*, 597 Fed. Appx. at 348. The Sixth Circuit has definitively held that there is a strong public interest in the strict regulation of horse racing. *See Friedman*, 1988 WL 31553, at *3. In Michigan, racing stewards are tasked with the responsibility of maintaining integrity and fairness within the sport. *See id.* Similarly, racing commissioners are responsible for enforcement, regulation, and licensing under Michigan Horse Racing Law. *See* Dkt. No. 206, p. 29 (Pg. ID 4386). Both roles would be compromised if these actors were routinely subjected to lawsuits from aggrieved licensees.

Second, as highlighted in *Friedman* and *VanHorn*, there were several procedural safeguards in place here to protect Plaintiffs. *See* 1988 WL 31553, at *2; 457 F.3d at 848. In regard to the hearings in front of Defendant Stewards, Plaintiffs received advanced notice, the assistance of counsel, and the opportunity to present testimony in an adversarial-like setting. *See* Dkt. No. 206, pp. 25-26 (Pg. ID 4382-83). Following these hearings, Defendant Stewards issued written decisions, detailing the reasons for Plaintiffs' suspensions. *See* Dkt. No. 90-13. And importantly, Defendant Stewards were required to rely on specific statutory criteria in making these decisions. These are just some of the procedural safeguards in place resembling that of the judicial process.

Plaintiffs enjoyed similar protections with respect to their exclusion orders. When Defendant Kalm issued those orders, he did so in written form, clearly specifying the grounds for each exclusion. *See* Dkt. No. 90-14. Though Plaintiffs did not receive a hearing prior to being issued these orders, they had the option of making a written request for a de novo hearing. *See id.* This presumably would have given Plaintiffs the opportunity to present their case anew in front of Defendant Kalm, with similar procedural safeguards that they enjoyed during their hearing in front of Defendant Stewards.[5]

Finally, all decisions by Defendant Stewards and Defendant Kalm were subject to appeal. Pursuant to Michigan Horse Racing Law § 431.1235, any person aggrieved by a decision of the racing stewards could seek review from the racing commissioner. Dkt. No. 206, pp. 27-28 (Pg. ID 4384-85). Similarly, under Article VI, Section 28 of the Michigan Constitution, all final decisions by the racing commissioner were reviewable by the state court. *Id.* at pp. 32-33 (Pg. ID 4389-90). Hence, there were mechanisms in place under Michigan law to correct any errors by Defendant Stewards and Defendant Kalm.

---

[5] While an open question remains as to whether Plaintiffs requested and/or received a timely post-exclusion administrative hearing (*See* Section B below), there is no indication that Defendant Kalm was at fault for this potential delay. The fact remains that at the time Defendant Kalm issued the exclusion orders, he did so with the understanding that Plaintiffs could request a de novo hearing in front of him if they so desired. Therefore, the Court does not share the same concerns surrounding bias or error in Defendant Kalm's decision making that the Seventh Circuit expressed in *Scott.* *See* 773 F.2d at 165, n.7.

In short, the Court finds that public policy favors extending quasi-judicial immunity to Defendant Stewards and Defendant Kalm. The roles that these quasi-judicial actors played in Plaintiffs' disciplinary proceedings closely resembled that of a judge, and the safeguards in place mirrored those available throughout the judicial process. Recognizing this, the Sixth Circuit has already indicated that racing stewards may be entitled to quasi-judicial immunity. *See Friedman*, 1988 WL 31553, at *3, n.4. It naturally follows that Defendant Kalm, acting under the same authority, would also be entitled to quasi-judicial immunity. Accordingly, the Court will Grant Defendants' Motion for Summary Judgment on Plaintiffs' Fifth Amendment claims.

### B. A Genuine Dispute of Material Fact Remains Surrounding Whether Defendants Construed Plaintiffs' 2011 License Applications as Requests for an Administrative Appeal of their Exclusion Orders.

Plaintiffs argue that they are entitled to summary judgment on their procedural due process claims because there is no dispute that Defendants, and specifically Defendant Ernst, construed Plaintiffs' 2011 license applications as requests for an administrative appeal of their exclusion orders, and then failed to schedule a timely hearing thereafter. Dkt. No. 201, p. 21 (Pg. ID 4343). The Court will disagree.

In *Moody I*, the Sixth Circuit held that there was an open question surrounding whether Defendants denied Plaintiffs the post-exclusion process they

were due, or whether Plaintiffs failed to seek that process. Dkt. No. 134, p. 15 (Pg. ID 3572). Subsequently, this Court held that there was a genuine dispute of material fact surrounding that question. Dkt. No. 172, pp. 12-13 (Pg. ID 4144-45). The Sixth Circuit's opinion in *Moody II* did not affect that holding. *See* Dkt. No. 195, p. 10 (Pg. ID 4299) (affirming the district court's denial of summary judgment on procedural due process claim).

While it is undisputed that Plaintiffs requested an administrative appeal on November 27, 2012, and received a hearing on April 25, 2013, whether that gap in time establishes a due process violation is not a question before the Court. *See* Dkt. No. 172, p. 13 (Pg. 4145). Plaintiffs attempted to raise this argument in a previous motion for summary judgment, but the Court held that Plaintiffs' Complaint did not properly reflect this claim. *See id.* The operative question before the Court is whether Defendants construed Plaintiffs' 2011 licenses applications as requests for an administrative appeal of their exclusion orders. Because a genuine dispute of material fact still remains surrounding this question, Plaintiffs are not entitled to summary judgment on their procedural due process claims.

## VI. Conclusion

For the reasons stated herein, the Court will GRANT Defendants' Motion for Summary Judgment [#206] and DENY Plaintiffs' Motion for Summary Judgment [#201].

IT IS SO ORDERED.


Dated:      March 15, 2019

s/Gershwin A. Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge


### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, March 15, 2019, by electronic and/or ordinary mail.

s/Teresa McGovern
Case Manager